UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 6 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GILBERT SALAZAR | § | |
| | § | |
| VS. | § | CAUSE NO. B-03-024 |
| | § | |
| CAMERON COUNTY AND | § | |
| CONRADO CANTU, IN HIS OFFICIAL | § | |
| AND INDIVIDUAL CAPACITY | § | |

## CONRADO CANTU'S MOTION FOR SUMMARY JUDGMENT (FED.R.CIV.P 56(b)) AND BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, Conrado Cantu, moves for Summary Judgment pursuant to FED. R.CIV. P. 56(b) on the ground that the plaintiff's causes of action are barred by the two-year statute of limitations.

### Summary Judgment Standard

1.    FED. R.CIV.P. 56(b) provides that a defending party may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), FED.R.CIV.P; *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 560 (1986); and *Chelates Corp. v. Citrate*, 477 U.S. 317, 323 (1986).

2.      This motion is based on the deposition of the Plaintiff. Relevant excerpts of the deposition are attached to this motion.[1]

### Statute of Limitations

3.      Plaintiff's claims are time-barred by the two-year statute of limitations applicable to § 1983 claims.[2] *See Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995). The Plaintiff's employment with the Cameron County Sheriff's Department was terminated effective January 1, 2001.The Plaintiff has admitted that he received notice of his termination at the latest on December 28, 2000. He filed suit on Tuesday, December 31, 2002,[3] thus any claims based on conduct occurring more than two years prior to that date, in this case prior to December 31, 2000, are time-barred. Plaintiff cannot defeat the statute of limitations time bar by alleging that the retaliatory conduct occurred on the effective date of his termination. The date from which the limitations period is calculated is the date the plaintiff becomes aware of the defendant's retaliatory conduct. *See McWilliams v. Escambia County School Bd.*, 658 F.2d 326, 330 (5th Cir. 1981) (citations omitted); *Jones v. ALCOA, Inc.*, 339 F.3d 359, 364 (5th Cir. Tex. 2003). In his deposition, the plaintiff testified as follows:

Q    Okay.  Then we started talking about a conversation  you had with Sheriff Cantu.

A    (Nods head affirmatively)

---

[1]    Other than the deposition of the plaintiff, the plaintiff's unverified answers to interrogatories and his responses to requests for production, there is no other discovery in the case. The plaintiff has no depositions, interrogatories, request for production or admission, and made no initial disclosures as required by Fed.R.Civ.P. 26(a).

[2]    By order dated August 7, 2003, the Court dismissed the Plaintiff's 42 U.S.C. 1985(3) and state constitutional claims. The only remaining cause of action is the section 1983 claim.

[3]    *See* Citations issued by the clerk of the 103rd Judicial District Court of Cameron County, the filed-marked copy of the original petition filed in state court, and the certified docket sheet of said clerk. These documents are on file and are attached to the Defendants' Notice of Removal.

Q    Sometime after January of 2001.  Correct?

A    Well, I was -- I was fired on January -- December the 28th.  I believe that's the date he gave me the letter.

Q    Okay.  And I will want to talk about that, too. December 28th.  Who gave you the letter? Do you remember?

A    Lieutenant McDuffy.

Q    Lieutenant McDuffy.

A    I was working.  It was during the lunch hour.  I was picking up a burger.  And -- and my brother called me on the radio and said, "You need to come -- you need to come to the department.  They have got a letter for you."  So I went in and Lieutenant McDuffy said, "What did you do to the sheriff?"  I go, "What?"  "What did you do to the sheriff?"  I go, "Omar?  Sheriff Omar?"  He goes, "No.  Sheriff Cantu."  I go, "Nothing."  He goes, "Well, here is your -- here is a letter."  And he handed me the letter.  I read it and it was -- your services are no longer needed, you know.

MR. LOPEZ:  I am sorry.  I didn't hear that.

THE WITNESS:  Your services are -- that I was terminated.  This was December the -- December the 28th.

Q    (BY MR. ESPARZA) Of 2000.  Correct?

A    (Nods head affirmatively)

Gilbert Salazar's deposition, pp. 20-21.

Q    And you went and you -- you received this letter?

A    I went to the sheriff's office.  I went in to Lieutenant McDuffy.  He was a lieutenant. And he was the one that handed -- gave me the letter.

Q    Okay.  Right here I would like to have a -- a blank page or have something marked as -- as Exhibit 2 so that you can just -- when you get your -- your deposition for review, let's insert the letter as -- as Exhibit 2, into the letter(sic).  Is that okay?

A    That's fine.

Q    Okay.  And what did the letter say?

3

A    Effective December the 28th, I believe, that your services were no longer needed.

Q    Effective December 28th or is that the date that you got the letter?

A    I am sorry.  I believe it was effective January the 1st, January 1st that my services were no longer going to be needed.

Q    Okay?

A    But I received it the 20 --

Q    The 28th?

A    I have it there.  I will -- I will bring you a copy.[4]

Gilbert Salazar's deposition, p. 52.

Q    Okay.  From reviewing the -- the days of the calendar and the -- the days there, do you recall roughly when it was that you received the -- the letter?

A    I believe it was -- it had to be either -- if I am not mistaken, it was either that Thursday or Friday.

Q    Okay.  You -- okay.  Thursday or Friday.  So, then, do you remember if you went into work either --

A    I was -- we were working when I -- when I received the letter, I was -- we were on the lunch hour.

Q    Okay.  And did you go back -- did you finish that day out or --

A    No.  No, I didn't.

Q    You left.  Did you consider that your -- your termination?

A    I -- I don't remember if I came back on Friday.

Q    Okay.  You certainly didn't go in over the weekend, though, correct?

A    No, I didn't.

---

[4] Mr Salazar agreed to attach the letter to a blank page marked as Exhibit No. 2 to the deposition. Mr. Salazar did not include the letter with the deposition.

Q   And you didn't show up to work on -- on Monday.

A   No.

Q   So when was the first time you actually became aware that you had been terminated?

A   When I received the letter.

Q   Okay.  The letter confirmed your gut feelings about Sheriff Cantu?

A   Yes.  He signed it.

Q   Okay.

A   His signature is on that letter.

Q   And you had some doubts before about your -- your job security.  And I guess my question was that letter confirmed your -- your doubts or -- or the feelings you had with regard to your job security.  Correct?

A   Yes.

Gilbert Salazar's deposition, pp. 53-54.

Q   Okay.  Now, on the 28th when you got that letter,  who signed the letter.

A   Conrado Cantu.

Q   Okay.  At that time do you think that you were not being rehired because of your involvement with -- with -- with Lucio?

A   Like I said, I had been there 16 years.  I mean, if -- I didn't -- you know, yes, I believed that was the reason.

Q   That the reason was because you had campaigned with Lucio?[5]

A   Yes.

Q   And you would have walked the blocks with Lucio?  Is that right?

---

[5] "Lucio" refers to the incumbent Sheriff, Omar Lucio, who was defeated by Conrado Cantu in the March 2000 primaries.  See p. 37 of Gilbert Salazar's deposition.

5

A    I walked a couple.

Q    And that you had put campaign -- put campaign signs -- put out campaign signs for Lucio. That was the reason why you received that letter. Is that right?

A    I don't know if that was related.

Q    Well, that was your belief at that time.

A    Okay.

Q    Is that right?

A    Yes.

Gilbert Salazar's deposition, p. 90-91.

In this instance, Defendant's alleged retaliatory conduct was the decision to terminate the plaintiff's employment, and the Plaintiff was made aware of it on December 28, 2000. Consequently, the Plaintiff's retaliation claims based upon his termination should be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED the Defendant prays that the Court enter an order granting summary judgment for the defendant on all claims; and that the Court enter any other order to which the defendant is entitled at law, equity or in the sound discretion of this Court.

Respectfully submitted,

LOPEZ & SMITH
3355 Cherry Ridge, Suite 100
San Antonio, Texas 78230
(210) 366-3666
FAX (210) 366-1985

By: _____
Albert López
State Bar No. 12562350
Fed. Id. No. 13339
ATTORNEYS FOR DEFENDANT,
CONRADO CANTU

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was sent by certified mail return receipt requested to Mr. Roberto Mendoza, 515 St. Charles Street, Brownsville, Texas 78521 and by regular mail to Charles Willette, Jr., 3505 Boca Chica, Boulevard, Brownsville, Texas 78521 on March 25, 2004.

Albert López

# DEPOSITION OF GILBERT SALAZAR

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GILBERT SALAZAR,                          *
                   Plaintiff,         *
                              *
VS.                                       *  CIVIL ACTION NO. B-03-024
                              *  (JURY REQUESTED)
CAMERON COUNTY, AND CONRADO               *
CANTU, in his Official and                *
Individual Capacity,                      *
                  Defendants.       *

****************************************************************

VIDEOTAPED AND ORAL DEPOSITION OF
GILBERT SALAZAR
JANUARY 30, 2004

****************************************************************

     ORAL DEPOSITION OF GILBERT SALAZAR, produced as a witness

at the instance of the Defendant and duly sworn, was taken in

the above-styled and numbered cause on the 30th day of January

2004, from 1:00 p.m. to 3:10 p.m., before Katherine J.

Brookbank, CSR in and for the State of Texas, reported by

method of machine stenography, at the office of Robert

Mendoza, 515 St. Charles Street, Brownsville, Texas, 78521,

pursuant to the Texas Federal Rules of Civil Procedure and the

provisions stated on the record hereto.



POCKURS COURT REPORTING SERVICE
1-800-423-7713

```
 1                        APPEARANCES

 2
     FOR THE PLAINTIFF(S)
 3        Mr. Robert Mendoza
          Law Offices of Robert Mendoza
 4        515 St. Charles Street
          Brownsville, Texas  78521
 5
     FOR THE DEFENDANT(S)
 6        Mr. Roman "Dino" Esparza
          Willette & Guerra, L.L.P.
 7        International Plaza, Suite 460
          3505 Boca Chica Boulevard
 8        Brownsville, Texas  78521

 9        Mr. Albert Lopez
          Lopez & Smith
10        3355 Cherry Ridge, Suite 100
          San Antonio, Texas  78230
11

12   ALSO PRESENT:  Ms. Katherine J. Brookbank, CSR
                    Juan Zamora, Televideo & Audio Production
13

14

15

16

17

18

19

20

21

22

23

24

25
```

POCKURS COURT REPORTING SERVICE
1-800-423-7713

# T A B L E   O F   C O N T E N T S

                                                                    PAGE

AGREEMENTS OF COUNSEL . . . . . . . . . . . . . . . . .    4


EXAMINATION OF GILBERT SALAZAR:

        By Mr. Roman "Dino" Esparza . . . . . . . . . .    6
        By Mr. Albert Lopez  . . . . . . . . . . . . . .   66

CHANGES AND SIGNATURE . . . . . . . . . . . . . . . . .   98

WITNESS'S SIGNATURE CERTIFICATE . . . . . . . . . . .    99

FILING CERTIFICATION  . . . . . . . . . . . . . . . . . 100


OBJECTIONS
     Mr. Robert Mendoza                                   81


EXHIBITS
NO. DESCRIPTION                                 MK'D   ID'D

1 - Plaintiff's Original Petition                36     36

2 - Letter (to be provided by the witness)       52     52

3 - December 2000 Calendar                       61     61

A G R E E M E N T S

It was agreed by and between counsel for the Plaintiff(s) and Defendant(s) that no objections need be made by any party at the time of taking said deposition, except objections as to the form of the question or the responsiveness of the answer, which if not made during the deposition are waived; but if and when said deposition, or any portion thereof, is offered in evidence at the trial of this cause by any party thereto, it shall be subject to any and all legal objections, such objections to be made at the time of tender, the same as though the witness were on the stand personally testifying;

It was further agreed that the original deposition transcript was delivered on the _10th_ day of _February_, 2004, to Mr. Robert Mendoza, 515 St. Charles Street, Brownsville, Texas, 78521, for examination and signature and is to be returned to Pockrus Reporting Service. If and when the original deposition transcript is returned with the correction sheet containing the changes made by the witness, if any, a copy of the changes will be forwarded to the Clerk and all counsel of record;

It was further agreed that in the event the original deposition is not signed by the witness within thirty (30) days and filed at the time of trial or hearing, that the

1    original or a certified copy of said deposition may be filed

2    in Court and used herein as though the witness had signed the

3    original deposition.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                    GILBERT SALAZAR,

 3        having been first duly sworn, testified as follows:

 4                    E X A M I N A T I O N

 5        Q    (BY MR. ESPARZA) Mr. Salazar, my name is Dino

 6   Esparza.  And you understand that I represent Cameron County.

 7   Correct?

 8        A    Yes, sir.

 9        Q    Okay.  Could you please state your full name for the

10   record?

11        A    Gilberto G. Salazar.

12        Q    Okay.  And -- and how old are you, Mr. Salazar?

13        A    How old am I?

14        Q    Yes, sir.

15        A    Forty-two.

16        Q    All right.  In a deposition, especially at the

17   beginning, I -- I usually get a lot of personal information.

18   A lot of the personal information I ask for involves Social

19   Security number, driver's license, but you work for the

20   county.  I have got a lot of your information already.

21        A    Okay.

22        Q    So I won't be getting into that.  But -- but there

23   are some things that I will ask you that -- that may seem a

24   bit personal, but they are -- they are somewhat related to the

25   -- the claims of your case.  And I will be asking you about
```

1      Q    Anywhere.

2      A    No.  Just what I told you right now.

3      Q    Okay.  And you have told me that you have logged

4   onto the computer at the Cameron County Workforce Commission

5   to look for security jobs.

6      A    My computer at the house.

7      Q    Your computer at the house.  But the jobs that you

8   investigated were too low paying?

9      A    Yes, sir.

10     Q    You did not submit any application for any type of

11  job since being terminated in --in 2001.  Correct?

12     A    Because the pay was -- was nothing compared to what

13  I was making.

14     Q    Okay.  Then we started talking about a conversation

15  you had with Sheriff Cantu.

16     A    (Nods head affirmatively)

17     Q    Sometime after January of 2001.  Correct?

18     A    Well, I was -- I was fired on January -- December

19  the 28th.  I believe that's the date he gave me the letter.

20     Q    Okay.  And I will want to talk about that, too.

21  December 28th.  Who gave you the letter?  Do you remember?

22     A    Lieutenant McDuffy.

23     Q    Lieutenant McDuffy.

24     A    I was working.  It was during the lunch hour.  I was

25  picking up a burger.  And -- and my brother called me on the

1    radio and said, "You need to come -- you need to come to the

2    department.  They have got a letter for you."  So I went in

3    and Lieutenant McDuffy said, "What did you do to the

4    sheriff?"  I go, "What?"  "What did you do to the sheriff?"

5    I go, "Omar?  Sheriff Omar?"  He goes, "No.  Sheriff Cantu."

6    I go, "Nothing."  He goes, "Well, here is your -- here is a

7    letter."  And he handed me the letter.  I read it and it was

8    -- your services are no longer needed, you know.

9              MR. LOPEZ:  I am sorry.  I didn't hear that.

10             THE WITNESS:  Your services are -- that I was

11   terminated.  This was December the -- December the 28th.

12        Q    (BY MR. ESPARZA) Of 2000.  Correct?

13        A    (Nods head affirmatively)

14        Q    Okay.  And that's -- that is almost the end of the

15   year.  That's almost the end of Sheriff Omar Lucio's term.

16   Correct?

17        A    Yes.

18        Q    Do you remember if you went into work that afternoon

19   or the next day?

20        A    To be honest, I don't remember.

21        Q    Okay.

22        A    I probably did.

23        Q    Okay.  And I will -- I might come back to that in a

24   little bit.

25        A    Okay.

1    started his campaign a little bit earlier.

2        A    Earlier.

3        Q    Correct?  So -- and he had a contested race with

4    your boss, Omar Lucio, the incumbent sheriff, in March of

5    2000.  Correct?

6        A    Yes.

7        Q    He won the primary and had to face a Republican

8    opponent in the general election in November.  Is that

9    correct?

10        A    Yes.

11        Q    Okay.  So we have got a pretty large time frame that

12    -- that a lot of things could have happened during.  Correct?

13        A    Correct.

14        Q    All right.  Let's -- so let's -- you mentioned that

15    he approached you and you have -- you have told us already,

16    very consistent with what is in your -- your petition, that

17    you told him, "I am supporting my boss."

18        A    Yes.

19        Q    Can you elaborate on the extent of those

20    conversations?

21        A    Well, the first time I saw him I was going to the

22    sheriff's department.  He was a constable.  So we met.  And he

23    told me, he goes, "You know what, I think I am going to run

24    for sheriff."  I told him, "Good," you know.  He says, "A lot

25    of people said they are going to support me."  You know, they

POCKURS COURT REPORTING SERVICE
1-800-423-7713

1      A    Correct.

2      Q    And you went and you -- you received this letter?

3      A    I went to the sheriff's office.  I went in to

4  Lieutenant McDuffy.  He was a lieutenant.  And he was the one

5  that handed -- gave me the letter.

6      Q    Okay.  Right here I would like to have a -- a blank

7  page or have something marked as -- as Exhibit 2 so that you

8  can just -- when you get your -- your deposition for review,

9  let's insert the letter as -- as Exhibit 2, into the

10  letter(sic).  Is that okay?

11      A    That's fine.

12      Q    Okay.  And what did the letter say?

13      A    Effective December the 28th, I believe, that your

14  services were no longer needed.

15      Q    Effective December 28th or is that the date that you

16  got the letter?

17      A    I am sorry.  I believe it was effective January the

18  1st, January 1st that my services were no longer going to be

19  needed.

20      Q    Okay?

21      A    But I received it the 20 --

22      Q    The 28th?

23      A    I have it there.  I will -- I will bring you a copy.

24      Q    Let me -- let me show you a calendar.  This -- and I

25  don't want -- I mean, I don't want to confuse you on the,

1    dates, but here is a -- if you look at this box right here,

2    that is a December calendar, and this is just one blown up.

3        A    Okay.

4        Q    If you want to take a look at it to confirm that it

5    matches.

6        A    (No audible response)

7            MR. LOPEZ:  Was that a yes?

8            THE WITNESS:  Yes.

9        Q    (BY MR. ESPARZA) The -- the blown up exhibit matches

10   the year December 2000.  Correct?

11       A    Correct.

12       Q    Okay.  From reviewing the -- the days of the

13   calendar and the -- the days there, do you recall roughly when

14   it was that you received the -- the letter?

15       A    I believe it was -- it had to be either -- if I am

16   not mistaken, it was either that Thursday or Friday.

17       Q    Okay.  You -- okay.  Thursday or Friday.  So, then,

18   do you remember if you went into work either --

19       A    I was -- we were working when I -- when I received

20   the letter, I was -- we were on the lunch hour.

21       Q    Okay.  And did you go back -- did you finish that

22   day out or --

23       A    No.  No, I didn't.

24       Q    You left.  Did you consider that your -- your

25   termination?

1    A    I -- I don't remember if I came back on Friday.

2    Q    Okay.  You certainly didn't go in over the weekend,

3    though, correct?

4    A    No, I didn't.

5    Q    And you didn't show up to work on -- on Monday.

6    A    No.

7    Q    So when was the first time you actually became aware

8    that you had been terminated?

9    A    When I received the letter.

10    Q    Okay.  The letter confirmed your gut feelings about

11    Sheriff Cantu?

12    A    Yes.  He signed it.

13    Q    Okay.

14    A    His signature is on that letter.

15    Q    And you had some doubts before about your -- your

16    job security.  And I guess my question was that letter

17    confirmed your -- your doubts or -- or the feelings you had

18    with regard to your job security.  Correct?

19    A    Yes.

20    Q    Okay.  We have talked about a lot of discussions and

21    -- and really the evidence that I -- that you will have to use

22    to -- to support your claim.  But let me -- let me just ask

23    you, so that you can -- in case there is anything you left

24    out, you can -- you can add it.  Is it your belief that the

25    sheriff's -- that your involvement in -- in Omar's Lucio's

POCKURS COURT REPORTING SERVICE
1-800-423-7713

1    A    Yes.

2    Q    On the 28th when you received the letter?

3    A    No.  At that time -- I -- like I told Mr. Esparza,

4    there were already rumors before that.

5    Q    Okay.  So you had known -- had known for some time?

6    A    Known who?

7    Q    That if you were going to be fired it was going to

8    be because you supported Lucio in his campaign.

9    A    There was rumors.  There was rumors.

10    Q    About that?

11    A    Yes.

12    Q    What I am trying to find out is whether there was

13    any doubt in your mind about your belief, any doubt in your

14    mind on the 28th of December when you received the letter that

15    the reason that you were being terminated was because of your

16    support of Mr. Lucio in his campaign?

17    A    I don't -- I don't understand your question.

18    Q    Okay.

19    A    You -- can you narrow it down.  Is it because I

20    believe that I was fired because I campaigned for Lucio?

21    Q    Yes.

22    A    Is that -- yes.

23    Q    And did you have that belief on the 28th, when you

24    got the letter?

25    A    Like I -- like I said, there was rumors before that.

```
 1    There were rumors.  You know how it is there at the county.
 2         Q    Sure.
 3         A    There are rumors.
 4         Q    But when you got the letter, did you think, "Listen,
 5    this is happening because I campaigned for Lucio"?
 6         A    Before that.
 7         Q    Before that.  But on the 28th it was even more.  Is
 8    that right?
 9         A    Oh, yes.
10         Q    Your belief was stronger on that date?
11         A    (Witness nods head affirmatively)
12         Q    Is that right?
13         A    (Witness nods head affirmatively)
14         Q    Because there would not be any other reasons why you
15    were going to be fired, is that right, in your mind?
16         A    I don't understand what you are --
17         Q    Was there any other reason in your mind why you
18    would have been fired other than your helping Lucio?
19         A    Like I said, we were -- we were -- we knew each
20    other.  We -- we -- he talked to me.  He told me to help him.
21    On three or four occasions -- two or three occasions, and the
22    three times I told him I -- I -- I was already, you know,
23    going to support Lucio.
24         Q    Do -- do you know of anyone else that went through
25    that interview panel?
```

```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
2                         BROWNSVILLE DIVISION

3    GILBERT SALAZAR                     *
                         Plaintiff,      *
4                                        *
     VS.                                 *  CIVIL ACTION NO. B-03-024
5                                        *  (JURY REQUESTED)
     CAMERON COUNTY, AND CONRADO         *
6    CANTU, in his Official and          *
     Individual Capacity,                *
7                         Defendants.    *

8
     -----------------------------------------------------------------
9                    CERTIFICATION FROM THE
       ORAL AND VIDEOTAPED DEPOSITION OF GILBERT SALAZAR
10                      JANUARY 30, 2004
     -----------------------------------------------------------------
11          I, KATHERINE J. BROOKBANK COX, a Certified Shorthand

12   Reporter in and for the State of Texas, do hereby certify that

13   the foregoing deposition is a full, true and correct

14   transcript;

15          That the foregoing deposition of GILBERT SALAZAR, the

16   witness, hereinbefore named was at the time named, taken by me

17   in stenograph on January 30, 2004, the said witness having

18   been by me first duly cautioned and sworn to tell the truth,

19   the whole truth, and nothing but the truth, and the same were

20   thereafter reduced to typewriting by me or under my direction.

21   The charge for the completed deposition is $ 534.25     due

22   from Defendant;

23          That, by agreement of counsel, the deposition officer is

24   instructed to release the original deposition transcript, and

25   the deposition officer is thereafter released of any further
```

1  responsibility with regard to the original.

2       That the transcript ( ) was ( ) was not received from the

3  witness within 30 days.

4       I further certify that I am neither counsel for, related

5  to, nor employed by any of the parties in the action in which

6  this proceeding was taken, and further that I am not

7  financially or otherwise interested in the outcome of the

8  action.

9       WITNESS MY HAND, this the 10th day of February, A.D. 2004.

10

11  Cert. No. 2060

12  Expires:  Dec. '04        KATHERINE J. BROOKBANK COX
                             Certified Shorthand Reporter
13                           in and for the State of Texas
                             Pockrus Reporting Service
                             P. O. Box 531786
14                           Harlingen, Texas  78553
                             1-800-423-7713 (TOLL FREE)
15                           1-956-350-4950 (PHONE)
                             1-956-350-3040 (FAX)

16

17

18

19

20

21

22

23

24

25

CAUSE NO. *2002-12-5172-D*

DEC 3 1 2002

| | | |
|---|---|---|
| GILBERT SALAZAR | * | THE *103rd* DISTRICT COURT |
| | * | |
| VS. | * | OF |
| | * | |
| CAMERON COUNTY AND | * | |
| CONRADO CANTU, in his official | * | |
| and individual capacity | * | CAMERON COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **GILBERT SALAZAR**, hereinafter referred to as Plaintiff, complaining of **CAMERON COUNTY** and **CONRADO CANTU**, hereinafter called by name or as defendants, and for such cause of action, would respectfully show unto the Court and jury as follows:

### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under Level 2 unless otherwise ordered by the Court or agreed to by the parties.

I.
### PARTIES

Plaintiff, **GILBERT SALAZAR,** is a resident of Cameron County, Texas.

Defendant, **CAMERON COUNTY,** is a Texas County and may be served with process herein by serving the Honorable Gilberto Hinojosa, County Judge at 964 E. Harrison Brownsville, Texas 78520.

Defendant, **CONRADO CANTU,** is an elected official with Cameron County, Texas and may be served with process at 954 E. Harrison, Brownsville, Texas 78520.

Service of citation is requested by Certified Mail, Return Receipt Requested, as is contemplated by Rule 106 of the Texas Rules of Civil Procedures.

Venue is proper in Cameron County, Texas in that the acts made the basis of this cause of action occurred in Cameron County, Texas and both plaintiff and defendants are located in Cameron County, Texas.



EXHIBIT
_____

II.
## FACTUAL ALLEGATIONS

The incidents giving rise to this cause of action are a result of a series of illegal and discriminatory occurrences that happened at the **CAMERON COUNTY SHERIFF'S DEPARTMENT** in Cameron County, Texas.

The Plaintiff **GILBERT SALAZAR** was employed with the Cameron County Sheriff's Department as a Sheriff's Deputy from December 1984 until his unlawful termination on January 1,2001.

Approximately one year before his termination, Plaintiff Gilbert Salazar was approached by Defendant Cantu who was at that time running for Sheriff of Cameron County. Cantu asked Plaintiff if he could count on his and his families support in his race against the incumbent Sheriff. Plaintiff Salazar responded he had already committed to support the incumbent and he could not go back on his word.

A few months later, Plaintiff was again approached by Cantu who repeated his request to have Plaintiff support him in his candidacy. Plaintiff Salazar reiterated that he was already supporting Cantu's opponent and politely declined defendant Cantu's request.

The election passed and defendant Cantu defeated the candidate supported by Plaintiff. Defendant Cantu later defeated his Republican opponent and was elected Sheriff.

Prior to taking office, defendant Cantu sent plaintiff Salazar a letter advising him that come January 1, 2001, his services would no longer be needed and he was being terminated effective that date. Plaintiff believes that his termination resulted from his political association and for exercising rights guaranteed under both the State and Federal Constitution. Accordingly, plaintiff brings this cause of action to redress violation of his civil rights.

III.

The **CAMERON COUNTY SHERIFF'S DEPARTMENT** where Plaintiff worked is a department of defendant **CAMERON COUNTY**, a governmental entity. As such, the Plaintiff is protected from the illegal and discriminatory action described herein.

IV.

## TEXAS CONSTITUTIONAL CAUSES OF ACTION

1. Freedom of Speech:  The actions of the defendants and all those acting in concert with them or at their discretion, deprived Plaintiff Gilbert Salazar of his right of free speech under *Article I, Section 8* of the Constitution of the State of Texas by basing their employment decision on Plaintiff's exercise of free speech on matters of public concern, political candidacy, political support of candidates, and political association.  Such action by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

2. Freedom of Association:  The actions of the defendants and all those acting in concert with them or at their discretion, deprived Plaintiff Gilbert Salazar of his right of freedom of association under *Article I, Section 8* of the Constitution of the State of Texas by solely basing their employment decision to an impermissible extent on Plaintiff's exercise to freely associate and/or disassociate with groups, public figures, political candidates and others.  Such action by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

V.

## 42 U.S.C. § 1983

The defendants and employees, agents and all those acting in concert with them or at their discretion acting under color of law acted with a deliberate indifference and subjected Plaintiff to the deprivations of the following rights, privileges and immunities secured by the laws and Constitution of the United States and Texas when they decided to discriminate, retaliate, refuse to hire, and take other adverse actions against Plaintiff and deny him further access to his job free from hostility and politics.

Specifically, defendants acting in their official capacity deprived Plaintiff of his right to free speech under the First and Fourteenth Amendments to the U.S. Constitution by basing their decision to terminate Plaintiff because of his exercise of free speech on matters of public concern and due to his support of adverse political candidates.  Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

Further, the defendants acting in their official capacity deprived Plaintiff of his right to privacy by basing their decision to an impermissible extent on Plaintiff's private affairs such as personal, social and political relationships with others.  Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

In addition, the defendants acting in their official capacity deprived Plaintiff of his right of freedom of association under the First and Fourteenth Amendments to the U.S. Constitution by basing their decision to terminate Plaintiff to an impermissible extent on his exercise of his right to freely associate and/or disassociate and/or disassociate with groups, public figures, political candidates, and others. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

The defendants, acting in their official capacity further conspired to deprive Plaintiff of rights guaranteed under the U.S. Constitution by committing such acts that caused injury to Plaintiff. Said actions were an attempt by defendants to accomplish an unlawful purpose by unlawful means. Such action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

As a result of these unlawful deprivations, Plaintiff has effectively been the victim of discrimination, retaliation, denial of employment, and other adverse actions. As a result, plaintiff has suffered anxiety, mental anguish, humiliation, embarrassment, and other emotional harm and distress, in addition to the loss of wages in the past and future.

## VI.
## 42 U.S.C. § 1985(3)

Plaintiff asserts a cause of action against Defendant Conrado Cantu, in his individual and official capacity, for conspiracy to violate his respective civil rights. Defendant Cantu conspired to illegally commit such acts that caused injury to Plaintiff. Said actions were an attempt by Defendant to accomplish the deprivation of Plaintiff's civil rights and privileges under the equal protection of the law by taking actions in furtherance of Defendant's attempt to deprive and infringe upon Plaintiff's individual and respective rights to free speech, freedom of association, and right to privacy. Defendant was aware of the wrongful nature of his act and benefitted or in intended to benefit by such actions.

## VII.
## ACTUAL DAMAGES

As a result of the incidents described above, Plaintiff has suffered mental pain and anguish. In all reasonable probability, Plaintiff will continue to suffer such mental pain and anguish for a long time into the future. Plaintiff has been further caused a loss or earnings and a loss of earning capacity well into the future. As a result, Plaintiff sues to regain all compensatory damages and any other relief to which he may be entitled to both in law and equity.

VIII.
## ATTORNEY'S FEES

By reason of the allegations of this petition, Plaintiff is entitled to recover attorney's fees in a sum that are reasonable and necessary. In this connection, Plaintiff will show that the attorney whose name is subscribed to this pleading has been employed to assist Plaintiff in the prosecution of this action. A reasonable attorneys fee is requested for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts.

IX.
## JURY TRIAL REQUEST

Plaintiff requests that a jury be convened in the trial of this cause.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff requests that Defendant take notice of the filing of this petition and that the following be granted:

a).     Judgment against Defendant for Plaintiff damages;

b).     Prejudgment interest as allowed by law;

c).     Interest on said judgment at the legal rate from date of judgment;

d).     Attorneys fees;

e).     For costs of suit herein; and

f).     Such other relief as the Court deems proper.

Respectfully submitted,

LAW OFFICE OF MIGUEL SALINAS
803 Old Port Isabel Rd.
Brownsville, Texas  78521
(956) 550-1115   Telephone
(956) 550-1134   Telefax

BY: _____
MIGUEL SALINAS
State Bar No. 17534750

ATTORNEY FOR PLAINTIFF

EXHIBIT NO. 2

(TO BE ATTACHED WHEN SUPPLEMENTED
TO REPORTER.)

| 2000 | | | | | | |
|------|------|------|------|------|------|------|
| **DECEMBER** | | | | | | |
| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

**EXHIBIT**

3

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                   BROWNSVILLE DIVISION

 3   GILBERT SALAZAR                *
                    Plaintiff,      *
 4                                  *
     VS.                            * CIVIL ACTION NO. B-03-024
 5                                  * (JURY REQUESTED)
     CAMERON COUNTY, AND CONRADO    *
 6   CANTU, in his Official and     *
     Individual Capacity,           *
 7                    Defendants.   *

 8

 9   ------------------------------------------------------
              CERTIFICATION FROM THE
     ORAL AND VIDEOTAPED DEPOSITION OF GILBERT SALAZAR
10                   JANUARY 30, 2004
     ------------------------------------------------------
11        I, KATHERINE J. BROOKBANK COX, a Certified Shorthand

12   Reporter in and for the State of Texas, do hereby certify that

13   the foregoing deposition is a full, true and correct

14   transcript;

15        That the foregoing deposition of GILBERT SALAZAR, the

16   witness, hereinbefore named was at the time named, taken by me

17   in stenograph on January 30, 2004, the said witness having

18   been by me first duly cautioned and sworn to tell the truth,

19   the whole truth, and nothing but the truth, and the same were

20   thereafter reduced to typewriting by me or under my direction.

21   The charge for the completed deposition is $ 534.25      due

22   from Defendant;

23        That, by agreement of counsel, the deposition officer is

24   instructed to release the original deposition transcript, and

25   the deposition officer is thereafter released of any further
```

POCKRUS COURT REPORTING SERVICE
1-800-423-7713

1    responsibility with regard to the original.

2    That the transcript ( ) was (√) was not received from the

3    witness within 30 days.

4    I further certify that I am neither counsel for, related

5    to, nor employed by any of the parties in the action in which

6    this proceeding was taken, and further that I am not

7    financially or otherwise interested in the outcome of the

8    action.

9    WITNESS MY HAND, this the 15th day of March, A.D. 2004.

10

11    Cert. No. 2060

12    Expires: Dec. '04       KATHERINE J. BROOKBANK COX
                              Certified Shorthand Reporter
                              in and for the State of Texas
13                            Pockrus Reporting Service
                              P. O. Box 531786
14                            Harlingen, Texas  78553
                              1-800-423-7713 (TOLL FREE)
15                            1-956-350-4950 (PHONE)
                              1-956-350-3040 (FAX)
16

17

18

19

20

21

22

23

24

25

POCKRUS COURT REPORTING SERVICE
1-800-423-7713

1

CHANGES AND SIGNATURE

2

3

RE:  GILBERT SALAZAR VS. CAMERON COUNTY, ET AL

4

5

PAGE     LINE     CHANGE          REASON

6  _____

7  _____

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 _____

23 _____

24 _____

25

POCKRUS COURT REPORTING SERVICE
1-800-423-7713

1         I, GILBERT SALAZAR, have read the foregoing

2    deposition and hereby affix my signature that same is true and

3    correct, except as noted above.

4    _____

5         GILBERT SALAZAR, Witness

6    THE STATE OF TEXAS    )

7    COUNTY OF _____ )

8

9        Before me, _____, on this day personally

10   appeared GILBERT SALAZAR, known to me (or proved to me under

11   oath or through _____) to be the person whose

12   name is subscribed to the foregoing instrument and

13   acknowledged to me that he executed the same for the purpose

14   and consideration therein expressed.

15

16       Given under my hand and seal of office this _____

17   day of _____, 2004.

18

19

20

21   _____

22   NOTARY PUBLIC IN AND FOR

23   THE STATE OF TEXAS

24

25