31

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 6 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GILBERT SALAZAR | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-03-024 |
| CAMERON COUNTY, AND | § | (JURY REQUESTED) |
| CONRADO CANTU, in his Official | § | |
| And Individual Capacity | § | |
| *Defendants* | | |

---

**DEFENDANT CAMERON COUNTY'S MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Cameron County, Defendant in the above styled and numbered matter, and

files this Motion for Summary Judgment pursuant to *Fed. R. Civ. P.* 56(b) in order to dismiss this

entire lawsuit on the ground that Plaintiff's claim is barred by the two year statute of limitations and

for cause would show as follows:

## I.
## INTRODUCTION

1.      Defendant files this motion for summary judgment on Plaintiff's claim that he was retaliated

against in violation of his First Amendment Right pursuant to 42 U.S.C.§ 1983.  Summary

judgment should be granted in this case because Plaintiff's cause of action is barred by the

two year statute of limitations and no genuine issue of fact exists.  The motion is supported

by law and Plaintiff's own deposition testimony.

-1-

## II.
## STANDARD OF REVIEW

1.  Summary Judgment is proper in any case where there is no genuine issue of material fact.
    *Fed. R.Civ. P.* 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552
    (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must
    demonstrate the absence of a genuine issue of material fact by either (1) submitting summary
    judgment evidence that negates the existence of a material element of plaintiff's claim or (2)
    showing there is no evidence to support an essential element of plaintiff's claim. *Id.* at 477
    U.S. 322-23, 106 S.Ct. at 2552-53. Summary judgement shall be rendered if the pleadings,
    depositions, answers to interrogatories and admissions on file, together with the affidavits,
    if any, show that there is no genuine issue as to any material fact. *Fed. R. Civ. P.* 56(c).

## III.
## SUMMARY JUDGMENT EVIDENCE

2.  In support of the Defendant's Motion for Summary Judgment, Defendant will rely upon
    and incorporate herein the following evidence:

    A.  Exhibit "A", Excerpts from Plaintiff Salazar's Deposition Testimony.

    B.  Exhibit "B", Plaintiff's Original Petition.

    Defendant hereby incorporates by reference the above described Exhibits into this motion
    for summary judgment. Defendant also incorporates by reference Defendant Conrado
    Cantu's motion for summary judgment into this motion.

## IV.
## ARGUMENT AND AUTHORITY

4.  Plaintiff's lawsuit is time barred by the two year statute of limitations. *Hitt v. Connel* 301

F.3d 240, 246 (5th Cir. 2002); see also, *Piotrowski v. City of Houston*, 51 F.3d 512, 514, n.5 (5th Cir. 1995). The limitations period on Plaintiff's cause of action begins to run when Plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. *Hitt* at 246. Plaintiff received his letter of termination on December 28, 2000, and he confirmed that upon his receipt of the letter he actually became aware of his termination. See Exhibit "A", Pg. 20-21, Pg. 51, Ln. 1-2, Pg. 54, Ln. 7-9. It was on December 28, 2000, that Plaintiff had sufficient information to know he had been injured and it is on this same date that Plaintiff's cause of action should have accrued. Plaintiff did not file his petition until December 31, 2002, three days after the statute of limitations tolled. See File Stamp of Plaintiff's Original Petition attached hereto as Exhibit "B". Therefore, Plaintiff's lawsuit is time barred and Defendant's motion for summary judgment should be granted.

4.   As summarized below, Plaintiff admitted all of the following in his deposition testimony, attached hereto as Exhibit "A", which demonstrates this cause of action began to accrue on December 28, 2000, thereby confirming Plaintiff's lawsuit should be dismissed as time barred:

**Pg. 48-49**            **After winning the Democratic primary in March of 2000, Conrado Cantu had a Republican opponent in the November 2000 general election. Plaintiff testified that he outwardly supported Sheriff Cantu in the general election, but that Sheriff Cantu did not pay much attention to him. Plaintiff "kind of had a feeling" his job security was in jeopardy during November of 2000.**

**Pg. 50, Ln. 10-12**   **After the November election, Plaintiff had a feeling Sheriff Cantu was going to let him go.**

**Pg. 51**               **Prior to receiving his termination letter on December 28th,**

**Plaintiff had a conversation with Sheriff Cantu on December 23rd about job security. Plaintiff testified that he "still had doubts" about his job security.**

Pg. 52-54      **Plaintiff received his termination letter on Thursday or Friday in December of 2000. See Deposition Exhibit 3, a December 2000 calendar.**

Pg. 52, Ln. 7-19      **Plaintiff admitted that upon his receipt of the termination letter, he became aware of his termination. In addition, Plaintiff testified that the letter confirmed the doubts he had about his job security and about Sheriff Cantu.**

Pg. 20-21      **Plaintiff confirmed he received the letter of termination on December 28, 2000.**

The evidence strongly supports Defendant's position that Plaintiff's lawsuit should be barred by the two year statute of limitations. Accordingly, Defendant's motion for summary judgment should be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant Cameron County prays that upon hearing this motion, the Court grant Defendant Cameron County's Motion for Summary Judgment and that Defendant have such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
1534 E. 6th Street, Suite 200
Brownsville, Texas 78520
Telephone    : (956) 541-1846
Facsimile    : (956) 541-1893

Roman "Dino" Esparza
State Bar No. 00795337
USDC No. 22703

Charles Willette, Jr.
State Bar No. 21509700
USDC No. 1937

-4-

## CERTIFICATE OF SERVICE

I, hereby certify that on, March 26, 2004 a true and correct copy of the above and foregoing

has been served on all counsel of record via certified return receipt requested as herein below noted:

**Via CMRRR 7002 3150 0001 8820 2823**
Mr. Robert Mendoza
LAW OFFICE OF ROBERT MENDOZA
515 St. Charles
Brownsville, Texas 78521

**Via Regular Mail**
Albert Lopez
Lopez & Smith
3355 Cherry Ridge, Suite 100
San Antonio, Texas 78230

_____
Roman "Dino" Esparza

# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GILBERT SALAZAR,                    *
                    Plaintiff,      *
                                    *
VS.                                 *  CIVIL ACTION NO. B-03-024
                                    *  (JURY REQUESTED)
CAMERON COUNTY, AND CONRADO         *
CANTU, in his Official and          *
Individual Capacity,                *
                    Defendants.     *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VIDEOTAPED AND ORAL DEPOSITION OF
GILBERT SALAZAR
JANUARY 30, 2004

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


    ORAL DEPOSITION OF GILBERT SALAZAR, produced as a witness

at the instance of the Defendant and duly sworn, was taken in

the above-styled and numbered cause on the 30th day of January

2004, from 1:00 p.m. to 3:10 p.m., before Katherine J.

Brookbank, CSR in and for the State of Texas, reported by

method of machine stenography, at the office of Robert

Mendoza, 515 St. Charles Street, Brownsville, Texas, 78521,

pursuant to the Texas Federal Rules of Civil Procedure and the

provisions stated on the record hereto.


ORIGINAL

```
 1                          APPEARANCES

 2
        FOR THE PLAINTIFF(S)
 3          Mr. Robert Mendoza
            Law Offices of Robert Mendoza
 4          515 St. Charles Street
            Brownsville, Texas  78521
 5
        FOR THE DEFENDANT(S)
 6          Mr. Roman "Dino" Esparza
            Willette & Guerra, L.L.P.
 7          International Plaza, Suite 460
            3505 Boca Chica Boulevard
 8          Brownsville, Texas  78521

 9          Mr. Albert Lopez
            Lopez & Smith
10          3355 Cherry Ridge, Suite 100
            San Antonio, Texas  78230
11

12      ALSO PRESENT:  Ms. Katherine J. Brookbank, CSR
                       Juan Zamora, Televideo & Audio Production
13

14

15

16

17

18

19

20

21

22

23

24

25
```

POCKURS COURT REPORTING SERVICE
1-800-423-7713

1                    T A B L E   O F   C O N T E N T S

2                                                              PAGE

3    AGREEMENTS OF COUNSEL . . . . . . . . . . . . . .   4

4

5    EXAMINATION OF GILBERT SALAZAR:

6        By Mr. Roman "Dino" Esparza  . . . . . . . . .   6
         By Mr. Albert Lopez  . . . . . . . . . . . .   66
7
     CHANGES AND SIGNATURE . . . . . . . . . . . . . .   98
8
     WITNESS'S SIGNATURE CERTIFICATE . . . . . . . . .   99
9
     FILING CERTIFICATION  . . . . . . . . . . . . . . 100
10

11

12   OBJECTIONS
         Mr. Robert Mendoza                             81
13

14   EXHIBITS
     NO. DESCRIPTION                            MK'D  ID'D
15
     1 - Plaintiff's Original Petition           36    36
16
     2 - Letter (to be provided by the witness)  52    52
17
     3 - December 2000 Calendar                  61    61
18

19

20

21

22

23

24

25

POCKURS COURT REPORTING SERVICE
1-800-423-7713

```
 1                        A G R E E M E N T S

 2

 3            It was agreed by and between counsel for the

 4     Plaintiff(s) and Defendant(s) that no objections need be made

 5     by any party at the time of taking said deposition, except

 6     objections as to the form of the question or the

 7     responsiveness of the answer, which if not made during the

 8     deposition are waived; but if and when said deposition, or any

 9     portion thereof, is offered in evidence at the trial of this

10     cause by any party thereto, it shall be subject to any and all

11     legal objections, such objections to be made at the time of

12     tender, the same as though the witness were on the stand

13     personally testifying;

14            It was further agreed that the original deposition

15     transcript was delivered on the _10th__ day of _February_,

16     2004, to Mr. Robert Mendoza, 515 St. Charles Street,

17     Brownsville, Texas, 78521, for examination and signature and

18     is to be returned to Pockrus Reporting Service.  If and when

19     the original deposition transcript is returned with the

20     correction sheet containing the changes made by the witness,

21     if any, a copy of the changes will be forwarded to the Clerk

22     and all counsel of record;

23            It was further agreed that in the event the original

24     deposition is not signed by the witness within thirty (30)

25     days and filed at the time of trial or hearing, that the
```

POCKURS COURT REPORTING SERVICE
1-800-423-7713

1    original or a certified copy of said deposition may be filed

2    in Court and used herein as though the witness had signed the

3    original deposition.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       A    No.

2       Q    Okay.  What about for the year 2002, did you submit

3   an application to any employer in the year 2002?

4       A    No.

5       Q    For the same reasons?

6       A    For the same reason.  The pay was -- they would

7   start me, you know, minimum wage.

8       Q    Okay.  For the year 2003, did you ever submit an

9   application for any type of employment?

10      A    No.

11      Q    Okay.  Since your termination, have you made any

12  efforts to gain employment other than what you have discussed

13  right now?

14      A    Well, after -- right after I was fired, I tried to

15  talk to Mr. Cantu.  I tried to talk to the commissioners --

16  I -- I am sorry, the judge, Hinojosa.  I talked to other

17  people.  They hired my brother back, my brother Chris.  They

18  said, "We will hire you back, but we are not hiring Gilbert."

19  I did try a lot of times trying to talk to the sheriff or the

20  judge.  Anybody.  And nobody would.

21      Q    Okay.  Let's -- and I want to go back and -- and ask

22  you specifically about your conversations with them.  Other --

23  is there any other effort that you made to gain employment

24  since being terminated by the county?

25      A    At the county or --

```
1          Q    Anywhere.

2          A    No.  Just what I told you right now.

3          Q    Okay.  And you have told me that you have logged

4    onto the computer at the Cameron County Workforce Commission

5    to look for security jobs.

6          A    My computer at the house.

7          Q    Your computer at the house.  But the jobs that you

8    investigated were too low paying?

9          A    Yes, sir.

10         Q    You did not submit any application for any type of

11   job since being terminated in --in 2001.  Correct?

12         A    Because the pay was -- was nothing compared to what

13   I was making.

14         Q    Okay.  Then we started talking about a conversation

15   you had with Sheriff Cantu.

16         A    (Nods head affirmatively)

17         Q    Sometime after January of 2001.  Correct?

18         A    Well, I was -- I was fired on January -- December

19   the 28th.  I believe that's the date he gave me the letter.

20         Q    Okay.  And I will want to talk about that, too.

21   December 28th.  Who gave you the letter?  Do you remember?

22         A    Lieutenant McDuffy.

23         Q    Lieutenant McDuffy.

24         A    I was working.  It was during the lunch hour.  I was

25   picking up a burger.  And -- and my brother called me on the
```

```
 1     radio and said, "You need to come -- you need to come to the
 2     department.  They have got a letter for you."  So I went in
 3     and Lieutenant McDuffy said, "What did you do to the
 4     sheriff?"  I go, "What?"  "What did you do to the sheriff?"
 5     I go, "Omar?  Sheriff Omar?"  He goes, "No.  Sheriff Cantu."
 6     I go, "Nothing."  He goes, "Well, here is your -- here is a
 7     letter."  And he handed me the letter.  I read it and it was
 8     -- your services are no longer needed, you know.
 9                     MR. LOPEZ:  I am sorry.  I didn't hear that.
10                     THE WITNESS:  Your services are -- that I was
11     terminated.  This was December the -- December the 28th.
12         Q     (BY MR. ESPARZA) Of 2000.  Correct?
13         A     (Nods head affirmatively)
14         Q     Okay.  And that's -- that is almost the end of the
15     year.  That's almost the end of Sheriff Omar Lucio's term.
16     Correct?
17         A     Yes.
18         Q     Do you remember if you went into work that afternoon
19     or the next day?
20         A     To be honest, I don't remember.
21         Q     Okay.
22         A     I probably did.
23         Q     Okay.  And I will -- I might come back to that in a
24     little bit.
25         A     Okay.
```

1    Q    To -- because I -- I have got some exhibits.  And I

2    have got a calendar, so it might help refresh your memory.  I

3    am going to make a note that I also want to discuss the

4    conversations you had with Sheriff Cantu and Judge Hinojosa.

5    Okay?

6    A    Okay.

7    Q    But let me go back to some of the issues we were

8    discussing with regard to -- to employment.  Do you -- are you

9    self-employed or have you been self-employed since your

10   termination?

11   A    No, I haven't.

12   Q    Okay.  Is your -- is your wife -- does -- does your

13   wife have -- have employment?

14   A    When -- when I was terminated, she was working for

15   Customs here in Brownsville.  And she was not terminated, but

16   she was under contract.  So she worked there eight years and

17   the contract was up.  So she was -- she was out a year before

18   I was.  And she was out of work for four years.  And she just

19   started working with Customs in -- in Pharr International

20   Bridge.

21   Q    Okay.  But between early 2000 and up to when she

22   received this new job, she was not working?

23   A    No, she wasn't working.

24   Q    Her job with -- with Customs -- is it fair to say

25   that her job with Customs ended in early 2000, then?

1      Q    Okay.

2      A    -- 100 percent."  It's my boss.  I am going to

3   support him.  If he loses and it is going to be a Republican.

4   I know you personally, as a friend, I will back you up.

5      Q    Okay.  Did you ever have any conversations with

6   these individuals that were spreading rumors?

7      A    No, I never did.

8      Q    Ever have any conversations with any -- any

9   individual high up on the -- Sheriff Cantu's ranks that

10  intimidated you or -- or threatened your job?

11     A    No.

12     Q    Okay.  When you say that you were being loyal to

13  your boss, Omar Lucio, what do you mean by that?  Did, you

14  know, do you mean that he just had your vote or were you out

15  there campaigning for Sheriff Lucio?

16     A    I did put a couple of signs for him.

17     Q    Okay.  Yard signs or what type of signs?

18     A    Yard signs.

19     Q    Just a couple of signs?

20     A    A couple.

21     Q    What about -- any of your family members put up

22  signs for him?

23     A    My brother helped a little.

24     Q    How many signs did he -- how did he help?

25     A    After work or on Saturdays, you know, we would go

1    and put some signs.

2        Q    So you put more than a couple of signs up or just --

3        A    I -- I put up more than he did.

4        Q    Okay.  Together, then, did you-all put up more than

5    10 signs?

6        A    Yes.

7        Q    Okay.  Did you -- did you personally block walk for

8    Omar Lucio?

9        A    Yes, I did.

10       Q    Pass out fliers for him?

11       A    Yes, sir.

12       Q    Did you tell your friends that you were supporting

13   him and -- and -- and try to solicit their support for Omar

14   Lucio?

15       A    No.  No.  I just block walked.  And, like I said, I

16   put some signs.

17       Q    Okay.  When you block walked, did you talk to people

18   or did you just put fliers on the door?

19       A    Put fliers.

20       Q    Did you have any stickers on your personal vehicles?

21       A    Yes, I did.

22       Q    Do you know if Conrado Cantu knew that you were

23   participating in this actively?

24       A    Yes, sir.

25       Q    How do you know Conrado Cantu knew that?

1      A     I had some friends told me that he knew that I

2    was -- I was campaigning for Omar.

3      Q     Okay.  And did they say that he was going to take it

4    out on you some way?

5      A     They said he was pretty upset.  And, like I said,

6    when I talked to him that time, he tried to convince me to --

7    to support him and I would tell him I couldn't.  You know, I

8    was supporting Omar.  He got pretty upset.

9      Q     Okay.  So is it your testimony that your involvement

10   in Lucio's campaign is the -- is a motivating factor behind

11   Conrado Cantu's decision not to rehire you?

12     A     When he won, he was still -- he was still a

13   constable.  And we go -- we go put gas in the county vehicles.

14   We would all go to the same place, the same pump here in

15   Brownsville, 14th Street.

16     Q     Okay.                .

17     A     And I got there to put gas in.  He was there.  And I

18   shook his hand and said, "Hey, Conrado, how are you doing?"

19   And he couldn't get the pump started, because we have a card

20   for the vehicle and a personal card that you put in the

21   computer.

22     Q     Uh-huh.

23     A     And he couldn't get it started.  So he goes, "I

24   don't think the pump is working."  I go, "No, they do.  They

25   work.  They are working.  Some deputy just left."  So he goes,

1    "Here, you try it."  So I got the credit cards and did the

2    first one, did the second one.  And I got the pumps working.

3    So we were putting gas in.  And he tells me, "I hear there are

4    a lot of people that are -- I hear a lot of people are scared,

5    you know, a lot of people that are scared because I am going

6    to fire a lot of people."  I said, "Well, you are the boss.

7    You do whatever.  And he told me, "No, I am not going to fire

8    nobody.  I know those -- it is the holidays.  You know, and

9    there are people that have families.  I would never do that."

10   And he finished.  He left.  I left.

11          The next thing you know, a couple of days later, I

12   received the -- they gave me the letter.

13        Q    Okay.  So this was even after he won the general

14   election, then?

15        A    The general election.

16        Q    Okay.

17        A    But he was still the --

18        Q    He was still the constable until the end of that

19   year?

20        A    (Nods head affirmatively)

21        Q    All right.  Let's go -- let's go back.  Because we

22   have talked about all of your discussions with the sheriff

23   through the primary, which was in March of 2000.

24        A    Yeah.

25        Q    Correct?

1          A      (Nods head affirmatively)

2          Q      All right.  So now you -- now Omar Lucio won -- I am

3    sorry, Omar Lucio lost the primary to Conrado Cantu.  Correct?

4          A      (Nods head affirmatively)

5          Q      But Conrado Cantu still had to run against his

6    Republican opponent.

7          A      Correct.

8          Q      So there was another campaign between March of 2000

9    and November of 2000.  Did you support Conrado Cantu in that

10   race?

11         A      Yes, I did.

12         Q      Outwardly?

13         A      Yes.

14         Q      Did you put plaques -- put your stickers on his car

15   -- on your car?

16         A      Yes.

17         Q      Did you put some signs up for him on the weekends?

18         A      I don't believe I put signs.

19         Q      Did you block walk or pass fliers out for him?

20         A      No.

21         Q      Did you attend any of his functions and -- and show

22   your support in public for him?

23         A      Yes, we did.

24         Q      Okay.

25         A      Both me and my brother.

1      Q   Okay.

2      A   We -- I bought, like, 20 -- 20 of his barbecue

3  tickets.  They had a party at Raymond's Castenada, a barbecue

4  party, campaign.  We were there.  I bought 20 tickets.  My

5  brother bought another 20.

6      Q   Okay.  And this is -- is this before the November

7  election?

8      A   This was when he was running against the Republican.

9      Q   Okay.  All right.  And did he ever give you any

10  indication that your job was in jeopardy during that -- that

11  time period when you were outwardly supporting him?

12      A   He -- he wouldn't talk much.

13      Q   Okay.  Did you feel that -- that your job security

14  was in jeopardy?

15      A   I kind of had a feeling, yes.

16      Q   You didn't trust Conrado Cantu?

17      A   Like I said, I know him personally.  I know him.

18      Q   So you -- you know the -- you know Sheriff Cantu,

19  and you were starting to feel that -- that your job may -- may

20  be in jeopardy.

21      A   When -- when he won, he had a party there at the

22  VFW.  We were there, me and my brother, Fermine, Robert

23  Lopez, and his cook.  And we all pitched in $20, bought some

24  chicken for him and everything, barbecued it for him.  But

25  still I could -- you know, there was something there.

1      Q    You had a gut feeling that -- that there may be a

2   betrayal?

3      A    I had -- maybe.  I don't know.

4      Q    And I don't want to put words in your mouth.  But --

5   but I am sensing that there would be -- you were thinking --

6   you had a feeling that -- that Conrado Cantu may be thinking

7   something different than what he told you about everybody's

8   jobs being safe?

9      A    Like I said, I know the man.  I know his character.

10      Q    And by that, what are you -- what are you saying?

11   Did you feel he was going to let you go?

12      A    Well, yes.

13      Q    Okay.  Now, that's during the November election.

14   Now, after he won the November election, he beat the

15   Republican, now he knows he is going to be the sheriff.

16   Correct?

17      A    Correct.

18      Q    Did you ever have any conversation with him before

19   this incident at the gas pumps?

20      A    I believe that was the last one.

21      Q    Okay.

22      A    It was late. . .

23      Q    So after the --

24      A    I would say about December the 23rd.

25      Q    Okay.

```
1          A      Twenty-second.  Because I received the letter on
2     December 28th, so it was before.
3          Q      Okay.  Then on the 23rd -- you said around the
4     23rd --
5          A      Around that -- it was before the 28th.
6          Q      Before the 28th you had a conversation or an
7     encounter with the sheriff.  And he mentioned to you that he
8     wasn't going to let anybody go over the holidays.
9          A      (Nods head affirmatively)
10          Q      Something to that effect?
11          A      Well, he told me that "There was a lot of people
12     that were scared that I was going to fire them."
13          Q      Okay.
14          A      And I told him, "You are the sheriff.  You are the
15     boss."  He said, "No, I am not going to fire nobody."  He
16     says, "I am a family man.  I know what it is.  And it is
17     during the holidays.  Families."  And that was it.  I believe
18     that was my last conversation.
19          Q      Okay.  Now, you know -- you know the sheriff.  Did
20     that reassure you or did you still have some doubt?
21          A      I still had doubts.
22          Q      Okay.  So within five days, you got this call from
23     your brother.
24          A      (Nods head affirmatively)
25          Q      Correct?
```

```
1          A      Correct.

2          Q      And you went and you -- you received this letter?

3          A      I went to the sheriff's office.  I went in to

4   Lieutenant McDuffy.  He was a lieutenant.  And he was the one

5   that handed -- gave me the letter.

6          Q      Okay.  Right here I would like to have a -- a blank

7   page or have something marked as -- as Exhibit 2 so that you

8   can just -- when you get your -- your deposition for review,

9   let's insert the letter as -- as Exhibit 2, into the

10  letter(sic).  Is that okay?

11         A      That's fine.

12         Q      Okay.  And what did the letter say?

13         A      Effective December the 28th, I believe, that your

14  services were no longer needed.

15         Q      Effective December 28th or is that the date that you

16  got the letter?

17         A      I am sorry.  I believe it was effective January the

18  1st, January 1st that my services were no longer going to be

19  needed.

20         Q      Okay?

21         A      But I received it the 20 --

22         Q      The 28th?

23         A      I have it there.  I will -- I will bring you a copy.

24         Q      Let me -- let me show you a calendar.  This -- and I

25  don't want -- I mean, I don't want to confuse you on the,
```

```
 1      dates, but here is a -- if you look at this box right here,

 2      that is a December calendar, and this is just one blown up.

 3           A    Okay.

 4           Q    If you want to take a look at it to confirm that it

 5      matches.

 6           A    (No audible response)

 7                     MR. LOPEZ:  Was that a yes?

 8                     THE WITNESS:  Yes.

 9           Q    (BY MR. ESPARZA) The -- the blown up exhibit matches

10      the year December 2000.  Correct?

11           A    Correct.

12           Q    Okay.  From reviewing the -- the days of the

13      calendar and the -- the days there, do you recall roughly when

14      it was that you received the -- the letter?

15           A    I believe it was -- it had to be either -- if I am

16      not mistaken, it was either that Thursday or Friday.

17           Q    Okay.  You -- okay.  Thursday or Friday.  So, then,

18      do you remember if you went into work either --

19           A    I was -- we were working when I -- when I received

20      the letter, I was -- we were on the lunch hour.

21           Q    Okay.  And did you go back -- did you finish that

22      day out or --

23           A    No.  No, I didn't.

24           Q    You left.  Did you consider that your -- your

25      termination?
```

1          A    I -- I don't remember if I came back on Friday.

2          Q    Okay.  You certainly didn't go in over the weekend,

3     though, correct?

4          A    No, I didn't.

5          Q    And you didn't show up to work on -- on Monday.

6          A    No.

7          Q    So when was the first time you actually became aware

8     that you had been terminated?

9          A    When I received the letter.

10         Q    Okay.  The letter confirmed your gut feelings about

11    Sheriff Cantu?

12         A    Yes.  He signed it.

13         Q    Okay.

14         A    His signature is on that letter.

15         Q    And you had some doubts before about your -- your

16    job security.  And I guess my question was that letter

17    confirmed your -- your doubts or -- or the feelings you had

18    with regard to your job security.  Correct?

19         A    Yes.

20         Q    Okay.  We have talked about a lot of discussions and

21    -- and really the evidence that I -- that you will have to use

22    to -- to support your claim.  But let me -- let me just ask

23    you, so that you can -- in case there is anything you left

24    out, you can -- you can add it.  Is it your belief that the

25    sheriff's -- that your involvement in -- in Omar's Lucio's

1    campaign was a motivating factor behind Sheriff Cantu's

2    decision to not rehire you?

3        A    Correct.

4        Q    Okay.  Is there any other evidence other than that

5    which we have discussed that you know of to help you support

6    that belief?

7        A    Just rumors.  Rumors that were going around that --

8    that -- like I say, we tried to talk to a lot of his friends,

9    like, one of them was Raymond.  Raymond Castenada.  Because we

10   went to -- to when he had that party there at the house, he

11   said, "No, Gilbert, the sheriff doesn't want to have anything

12   to do with you.  You supported Omar.  They will hire your

13   brother."  He said, "they are going to think about hiring your

14   brother, but not you."  And there were other people that were,

15   like, that were helping him in his campaign, you know, giving

16   him cotton trailers from the ranch and everything.  And they

17   -- they called him, too.  They said, "Sheriff, you know, he is

18   a good guy.  We know the family and everything."  And he goes,

19   "No, there is no way.  There is no way I will hire him back."

20       Q    Okay.  Who -- who are these individuals that he said

21   that to?

22       A    One of them, like I said, was Raymond, because

23   Raymond was a big supporter.  Raymond Castenada.

24       Q    And, unfortunately, Mr. Castenada is -- was involved

25   in a terrible accident and he is no longer with us.  Correct?

```
 1                        CHANGES AND SIGNATURE

 2

 3        RE:  GILBERT SALAZAR VS. CAMERON COUNTY, ET AL

 4

 5        PAGE      LINE     CHANGE            REASON

 6        _____

 7        _____

 8        _____

 9        _____

10        _____

11        _____

12        _____

13        _____

14        _____

15        _____

16        _____

17        _____

18        _____

19        _____

20        _____

21        _____

22        _____

23        _____

24        _____

25
```

```
 1              I, GILBERT SALAZAR, have read the foregoing

 2      deposition and hereby affix my signature that same is true and

 3      correct, except as noted above.

 4                              _____

 5                              GILBERT SALAZAR, Witness

 6      THE STATE OF TEXAS     )

 7      COUNTY OF _____ )

 8

 9          Before me, _____, on this day personally

10      appeared GILBERT SALAZAR, known to me (or proved to me under

11      oath or through _____) to be the person whose

12      name is subscribed to the foregoing instrument and

13      acknowledged to me that he executed the same for the purpose

14      and consideration therein expressed.

15

16          Given under my hand and seal of office this _____

17      day of _____, 2004.

18

19

20

21                              _____

22                              NOTARY PUBLIC IN AND FOR

23                              THE STATE OF TEXAS

24

25
```

```
 1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE SOUTHERN DISTRICT OF TEXAS
 2                         BROWNSVILLE DIVISION

 3    GILBERT SALAZAR                  *
                      Plaintiff,       *
 4                                     *
      VS.                              *  CIVIL ACTION NO. B-03-024
 5                                     *  (JURY REQUESTED)
      CAMERON COUNTY, AND CONRADO      *
 6    CANTU, in his Official and       *
      Individual Capacity,             *
 7                      Defendants.    *

 8
      ----------------------------------------------------------------
 9                     CERTIFICATION FROM THE
           ORAL AND VIDEOTAPED DEPOSITION OF GILBERT SALAZAR
10                       JANUARY 30, 2004
      ----------------------------------------------------------------
11         I, KATHERINE J. BROOKBANK COX, a Certified Shorthand

12    Reporter in and for the State of Texas, do hereby certify that

13    the foregoing deposition is a full, true and correct

14    transcript;

15         That the foregoing deposition of GILBERT SALAZAR, the

16    witness, hereinbefore named was at the time named, taken by me

17    in stenograph on January 30, 2004, the said witness having

18    been by me first duly cautioned and sworn to tell the truth,

19    the whole truth, and nothing but the truth, and the same were

20    thereafter reduced to typewriting by me or under my direction.

21    The charge for the completed deposition is $ 534.25    due

22    from Defendant;

23         That, by agreement of counsel, the deposition officer is

24    instructed to release the original deposition transcript, and

25    the deposition officer is thereafter released of any further
```

POCKURS COURT REPORTING SERVICE
1-800-423-7713

1    responsibility with regard to the original.

2         That the transcript ( ) was ( ) was not received from the

3    witness within 30 days.

4         I further certify that I am neither counsel for, related

5    to, nor employed by any of the parties in the action in which

6    this proceeding was taken, and further that I am not

7    financially or otherwise interested in the outcome of the

8    action.

9         WITNESS MY HAND, this the 10th day of February, A.D. 2004.

10

11   Cert. No. 2060

12   Expires:  Dec. '04        KATHERINE J. BROOKBANK COX
                               Certified Shorthand Reporter
13                             in and for the State of Texas
                               Pockrus Reporting Service
14                             P. O. Box 531786
                               Harlingen, Texas  78553
15                             1-800-423-7713 (TOLL FREE)
                               1-956-350-4950 (PHONE)
16                             1-956-350-3040 (FAX)

17

18

19

20

21

22

23

24

25

01/14/03 TUE 16:25 FAX 956 2 01345        CIVIL DIVISION                          ☒002

CAUSE NO. _2002-12-5172-D_

|                              |   |                          |
|------------------------------|---|--------------------------|
| GILBERT SALAZAR              | * | THE _103rd_ DISTRICT COURT |
|                              | * |                          |
| VS.                          | * | OF                       |
|                              | * |                      *   |
| CAMERON COUNTY AND           | * |                          |
| CONRADO CANTU, in his official| * |                          |
| and individual capacity      | * | CAMERON COUNTY, TEXAS    |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **GILBERT SALAZAR**, hereinafter referred to as Plaintiff, complaining of **CAMERON COUNTY** and **CONRADO CANTU**, hereinafter called by name or as defendants, and for such cause of action, would respectfully show unto the Court and jury as follows:

### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under Level 2 unless otherwise ordered by the Court or agreed to by the parties.

I.
### PARTIES

Plaintiff, **GILBERT SALAZAR**, is a resident of Cameron County, Texas.

Defendant, **CAMERON COUNTY**, is a Texas County and may be served with process herein by serving the Honorable Gilberto Hinojosa, County Judge at 964 E. Harrison Brownsville, Texas 78520.

Defendant, **CONRADO CANTU**, is an elected official with Cameron County, Texas and may be served with process at 954 E. Harrison, Brownsville, Texas 78520.

Service of citation is requested by Certified Mail, Return Receipt Requested, as is contemplated by Rule 106 of the Texas Rules of Civil Procedures.

Venue is proper in Cameron County, Texas in that the acts made the basis of this cause of action occurred in Cameron County, Texas and both plaintiff and defendants are located in Cameron County, Texas.



EXHIBIT
_____

## II.
## FACTUAL ALLEGATIONS

The incidents giving rise to this cause of action are a result of a series of illegal and discriminatory occurrences that happened at the **CAMERON COUNTY SHERIFF'S DEPARTMENT** in Cameron County, Texas.

The Plaintiff **GILBERT SALAZAR** was employed with the Cameron County Sheriff's Department as a Sheriff's Deputy from December 1984 until his unlawful termination on January 1,2001.

Approximately one year before his termination, Plaintiff Gilbert Salazar was approached by Defendant Cantu who was at that time running for Sheriff of Cameron County. Cantu asked Plaintiff if he could count on his and his families support in his race against the incumbent Sheriff. Plaintiff Salazar responded he had already committed to support the incumbent and he could not go back on his word.

A few months later, Plaintiff was again approached by Cantu who repeated his request to have Plaintiff support him in his candidacy. Plaintiff Salazar reiterated that he was already supporting Cantu's opponent and politely declined defendant Cantu's request.

The election passed and defendant Cantu defeated the candidate supported by Plaintiff. Defendant Cantu later defeated his Republican opponent and was elected Sheriff.

Prior to taking office, defendant Cantu sent plaintiff Salazar a letter advising him that come January 1, 2001, his services would no longer be needed and he was being terminated effective that date. Plaintiff believes that his termination resulted from his political association and for exercising rights guaranteed under both the State and Federal Constitution. Accordingly, plaintiff brings this cause of action to redress violation of his civil rights.

## III.

The **CAMERON COUNTY SHERIFF'S DEPARTMENT** where Plaintiff worked is a department of defendant **CAMERON COUNTY,** a governmental entity. As such, the Plaintiff is protected from the illegal and discriminatory action described herein.

## IV.
## TEXAS CONSTITUTIONAL CAUSES OF ACTION

1. Freedom of Speech: The actions of the defendants and all those acting in concert with them or at their discretion, deprived Plaintiff Gilbert Salazar of his right of free speech under *Article I, Section 8* of the Constitution of the State of Texas by basing their employment decision on Plaintiff's exercise of free speech on matters of public concern, political candidacy, political support of candidates, and political association. Such action by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

2. Freedom of Association: The actions of the defendants and all those acting in concert with them or at their discretion, deprived Plaintiff Gilbert Salazar of his right of freedom of association under *Article I, Section 8* of the Constitution of the State of Texas by solely basing their employment decision to an impermissible extent on Plaintiff's exercise to freely associate and/or disassociate with groups, public figures, political candidates and others. Such action by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

## V.
## 42 U.S.C. § 1983

The defendants and employees, agents and all those acting in concert with them or at their discretion acting under color of law acted with a deliberate indifference and subjected Plaintiff to the deprivations of the following rights, privileges and immunities secured by the laws and Constitution of the United States and Texas when they decided to discriminate, retaliate, refuse to hire, and take other adverse actions against Plaintiff and deny him further access to his job free from hostility and politics.

Specifically, defendants acting in their official capacity deprived Plaintiff of his right to free speech under the First and Fourteenth Amendments to the U.S. Constitution by basing their decision to terminate Plaintiff because of his exercise of free speech on matters of public concern and due to his support of adverse political candidates. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

Further, the defendants acting in their official capacity deprived Plaintiff of his right to privacy by basing their decision to an impermissible extent on Plaintiff's private affairs such as personal, social and political relationships with others. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

In addition, the defendants acting in their official capacity deprived Plaintiff of his right of freedom of association under the First and Fourteenth Amendments to the U.S. Constitution by basing their decision to terminate Plaintiff to an impermissible extent on his exercise of his right to freely associate and/or disassociate and/or disassociate with groups, public figures, political candidates, and others. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

The defendants, acting in their official capacity further conspired to deprive Plaintiff of rights guaranteed under the U.S. Constitution by committing such acts that caused injury to Plaintiff. Said actions were an attempt by defendants to accomplish an unlawful purpose by unlawful means. Such action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

As a result of these unlawful deprivations, Plaintiff has effectively been the victim of discrimination, retaliation, denial of employment, and other adverse actions. As a result, plaintiff has suffered anxiety, mental anguish, humiliation, embarrassment, and other emotional harm and distress, in addition to the loss of wages in the past and future.

## VI.
## 42 U.S.C. § 1985(3)

Plaintiff asserts a cause of action against Defendant Conrado Cantu, in his individual and official capacity, for conspiracy to violate his respective civil rights. Defendant Cantu conspired to illegally commit such acts that caused injury to Plaintiff. Said actions were an attempt by Defendant to accomplish the deprivation of Plaintiff's civil rights and privileges under the equal protection of the law by taking actions in furtherance of Defendant's attempt to deprive and infringe upon Plaintiff's individual and respective rights to free speech, freedom of association, and right to privacy. Defendant was aware of the wrongful nature of his act and benefitted or in intended to benefit by such actions.

## VII.
## ACTUAL DAMAGES

As a result of the incidents described above, Plaintiff has suffered mental pain and anguish. In all reasonable probability, Plaintiff will continue to suffer such mental pain and anguish for a long time into the future. Plaintiff has been further caused a loss or earnings and a loss of earning capacity well into the future. As a result, Plaintiff sues to regain all compensatory damages and any other relief to which he may be entitled to both in law and equity.

VIII.
**ATTORNEY'S FEES**

By reason of the allegations of this petition, Plaintiff is entitled to recover attorney's fees in a sum that are reasonable and necessary. In this connection, Plaintiff will show that the attorney whose name is subscribed to this pleading has been employed to assist Plaintiff in the prosecution of this action. A reasonable attorneys fee is requested for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts.

IX.
**JURY TRIAL REQUEST**

Plaintiff requests that a jury be convened in the trial of this cause.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff requests that Defendant take notice of the filing of this petition and that the following be granted:

a). Judgment against Defendant for Plaintiff damages;

b). Prejudgment interest as allowed by law;

c). Interest on said judgment at the legal rate from date of judgment;

d). Attorneys fees;

e). For costs of suit herein; and

f). Such other relief as the Court deems proper.

Respectfully submitted,

LAW OFFICE OF MIGUEL SALINAS
803 Old Port Isabel Rd.
Brownsville, Texas 78521
(956) 550-1115 Telephone
(956) 550-1134 Telefax

BY: _____
MIGUEL SALINAS
State Bar No. 17534750

ATTORNEY FOR PLAINTIFF

}

EXHIBIT NO. 2

(TO BE ATTACHED WHEN SUPPLEMENTED
TO REPORTER.)

| 2000 | | | | | | |
|------|------|------|------|------|------|------|
| **DECEMBER** | | | | | | |
| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

EXHIBIT

3

# Exhibit
# "A"

01. 14/03  TUE 16:25 FAX 9565 41345          CIVIL DIVISION                                                   ☑002

CAUSE NO. _2002-12-5172-D_

                                                                    DEC 3 1 2002

| | | |
|---|---|---|
| GILBERT SALAZAR | * | THE _103rd_ DISTRICT COURT |
| | * | |
| VS. | * | OF |
| | * | |
| CAMERON COUNTY AND | * | |
| CONRADO CANTU, in his official | * | |
| and individual capacity | * | CAMERON COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **GILBERT SALAZAR**, hereinafter referred to as Plaintiff, complaining of **CAMERON COUNTY** and **CONRADO CANTU**, hereinafter called by name or as defendants, and for such cause of action, would respectfully show unto the Court and jury as follows:

### DISCOVERY LEVEL

Discovery in this case is intended to be conducted under Level 2 unless otherwise ordered by the Court or agreed to by the parties.

I.
### PARTIES

Plaintiff, **GILBERT SALAZAR,** is a resident of Cameron County, Texas.

Defendant, **CAMERON COUNTY,** is a Texas County and may be served with process herein by serving the Honorable Gilberto Hinojosa, County Judge at 964 E. Harrison Brownsville, Texas 78520.

Defendant, **CONRADO CANTU,** is an elected official with Cameron County, Texas and may be served with process at 954 E. Harrison, Brownsville, Texas 78520.

Service of citation is requested by Certified Mail, Return Receipt Requested, as is contemplated by Rule 106 of the Texas Rules of Civil Procedures.

Venue is proper in Cameron County, Texas in that the acts made the basis of this cause of action occurred in Cameron County, Texas and both plaintiff and defendants are located in Cameron County, Texas.

II.
## FACTUAL ALLEGATIONS

The incidents giving rise to this cause of action are a result of a series of illegal and discriminatory occurrences that happened at the **CAMERON COUNTY SHERIFF'S DEPARTMENT** in Cameron County, Texas.

The Plaintiff **GILBERT SALAZAR** was employed with the Cameron County Sheriff's Department as a Sheriff's Deputy from December 1984 until his unlawful termination on January 1, 2001.

Approximately one year before his termination, Plaintiff Gilbert Salazar was approached by Defendant Cantu who was at that time running for Sheriff of Cameron County. Cantu asked Plaintiff if he could count on his and his families support in his race against the incumbent Sheriff. Plaintiff Salazar responded he had already committed to support the incumbent and he could not go back on his word.

A few months later, Plaintiff was again approached by Cantu who repeated his request to have Plaintiff support him in his candidacy. Plaintiff Salazar reiterated that he was already supporting Cantu's opponent and politely declined defendant Cantu's request.

The election passed and defendant Cantu defeated the candidate supported by Plaintiff. Defendant Cantu later defeated his Republican opponent and was elected Sheriff.

Prior to taking office, defendant Cantu sent plaintiff Salazar a letter advising him that come January 1, 2001, his services would no longer be needed and he was being terminated effective that date. Plaintiff believes that his termination resulted from his political association and for exercising rights guaranteed under both the State and Federal Constitution. Accordingly, plaintiff brings this cause of action to redress violation of his civil rights.

III.

The **CAMERON COUNTY SHERIFF'S DEPARTMENT** where Plaintiff worked is a department of defendant **CAMERON COUNTY,** a governmental entity. As such, the Plaintiff is protected from the illegal and discriminatory action described herein.

IV.
## TEXAS CONSTITUTIONAL CAUSES OF ACTION

1. Freedom of Speech: The actions of the defendants and all those acting in concert with them or at their discretion, deprived Plaintiff Gilbert Salazar of his right of free speech under *Article I, Section 8* of the Constitution of the State of Texas by basing their employment decision on Plaintiff's exercise of free speech on matters of public concern, political candidacy, political support of candidates, and political association. Such action by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

2. Freedom of Association: *The actions of the defendants and all those acting in concert with them or at their discretion, deprived Plaintiff Gilbert Salazar of his right of freedom of association under Article I, Section 8 of the Constitution of the State of Texas by solely basing their employment decision to an impermissible extent on Plaintiff's exercise to freely associate and/or disassociate with groups, public figures, political candidates and others.* Such action by Defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

V.
## 42 U.S.C. § 1983

The defendants and employees, agents and all those acting in concert with them or at their discretion acting under color of law acted with a deliberate indifference and subjected Plaintiff to the deprivations of the following rights, privileges and immunities secured by the laws and Constitution of the United States and Texas when they decided to discriminate, retaliate, refuse to hire, and take other adverse actions against Plaintiff and deny him further access to his job free from hostility and politics.

Specifically, defendants acting in their official capacity deprived Plaintiff of his right to free speech under the First and Fourteenth Amendments to the U.S. Constitution by basing their decision to terminate Plaintiff because of his exercise of free speech on matters of public concern and due to his support of adverse political candidates. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

Further, the defendants acting in their official capacity deprived Plaintiff of his right to privacy by basing their decision to an impermissible extent on Plaintiff's private affairs such as personal, social and political relationships with others. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

In addition, the defendants acting in their official capacity deprived Plaintiff of his right of freedom of association under the First and Fourteenth Amendments to the U.S. Constitution by basing their decision to terminate Plaintiff to an impermissible extent on his exercise of his right to freely associate and/or disassociate and/or disassociate with groups, public figures, political candidates, and others. Such retaliatory action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

The defendants, acting in their official capacity further conspired to deprive Plaintiff of rights guaranteed under the U.S. Constitution by committing such acts that caused injury to Plaintiff. Said actions were an attempt by defendants to accomplish an unlawful purpose by unlawful means. Such action by defendants were a customary practice and further enforced by policy makers in an arbitrary, capricious, unreasonable, unlawful, unconstitutional and discriminatory manner.

As a result of these unlawful deprivations, Plaintiff has effectively been the victim of discrimination, retaliation, denial of employment, and other adverse actions. As a result, plaintiff has suffered anxiety, mental anguish, humiliation, embarrassment, and other emotional harm and distress, in addition to the loss of wages in the past and future.

## VI.
## 42 U.S.C. § 1985(3)

Plaintiff asserts a cause of action against Defendant Conrado Cantu, in his individual and official capacity, for conspiracy to violate his respective civil rights. Defendant Cantu conspired to illegally commit such acts that caused injury to Plaintiff. Said actions were an attempt by Defendant to accomplish the deprivation of Plaintiff's civil rights and privileges under the equal protection of the law by taking actions in furtherance of Defendant's attempt to deprive and infringe upon Plaintiff's individual and respective rights to free speech, freedom of association, and right to privacy. Defendant was aware of the wrongful nature of his act and benefitted or in intended to benefit by such actions.

## VII.
## ACTUAL DAMAGES

As a result of the incidents described above, Plaintiff has suffered mental pain and anguish. In all reasonable probability, Plaintiff will continue to suffer such mental pain and anguish for a long time into the future. Plaintiff has been further caused a loss or earnings and a loss of earning capacity well into the future. As a result, Plaintiff sues to regain all compensatory damages and any other relief to which he may be entitled to both in law and equity.

## VIII.
## ATTORNEY'S FEES

By reason of the allegations of this petition, Plaintiff is entitled to recover attorney's fees in a sum that are reasonable and necessary. In this connection, Plaintiff will show that the attorney whose name is subscribed to this pleading has been employed to assist Plaintiff in the prosecution of this action. A reasonable attorneys fee is requested for the work expended in the preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts.

## IX.
## JURY TRIAL REQUEST

Plaintiff requests that a jury be convened in the trial of this cause.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff requests that Defendant take notice of the filing of this petition and that the following be granted:

a). Judgment against Defendant for Plaintiff damages;

b). Prejudgment interest as allowed by law;

c). Interest on said judgment at the legal rate from date of judgment;

d). Attorneys fees;

e). For costs of suit herein; and

f). Such other relief as the Court deems proper.

Respectfully submitted,

LAW OFFICE OF MIGUEL SALINAS
803 Old Port Isabel Rd.
Brownsville, Texas 78521
(956) 550-1115 Telephone
(956) 550-1134 Telefax

BY: _____
MIGUEL SALINAS
State Bar No. 17534750

ATTORNEY FOR PLAINTIFF